UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80153-CR-DIMITROULEAS

UNITED STATES OF AMERICA

v.

BALMY LINCOLN JOSEPH,

      Defendant.

_____/

**UNITED STATES' RESPONSE IN OPPOSITION TO**
**MOTION TO SUPPRESS SEARCH WARRANTS**

The United States, by and through the undersigned Assistant United States Attorney, files

this response to Balmy Joseph's motion to suppress search warrants [DE 54].  As a preliminary

matter, Joseph lacks standing to challenge the search of the black Audi vehicle.  In addition, Joseph

fails to meet his burden with regard to a Franks hearing.

## I.  FACTS

Balmy Joseph is a suspect in a homicide that occurred on July 6, 2018.  The victim,

Frederick Stockton, was gunned down at his place of employment.  Agents believe that years

earlier, Stockton or his associates were responsible for shooting Delson Marc.  After that shooting,

Stockton went to prison for an unrelated charge.  Stockton was released from prison in early 2018

and was actually on work release at the time of his July 6, 2018 murder.  Agents have reason to

believe that Delson Marc ordered Stockton's execution, and that Balmy Joseph was one of two

shooters who actually committed the murder.

While on scene of the homicide investigation, detectives spoke to Stockton's girlfriend.

She reported that Stockton called her while he was walking from his work release facility to the

bus stop that morning.  Stockton told his girlfriend that he (Stockton) was being followed by unknown individuals in a black Audi.  Because he was in fear for his life, Stockton returned to the work release facility and awaited a ride so he could get to work.

Detectives obtained surveillance video from the work release area of the Palm Beach County jail.  This video showed a black Audi following Stockton on the morning of his murder. The video also showed Stockton walking to the bus stop and then returning to the work release area, just as Stockton's girlfriend described.

Detectives also obtained a surveillance video of the parking lot where Stockton was murdered.  This video depicted the actual shooting and the vehicle used to commit the shooting, a gray Honda Accord.   Through other investigative techniques, detectives identified a person known to have driven the Honda Accord, J.J.G., with a date of birth of XX/XX/1996, and a social security number ending in 9764.

On July 8, 2018, tactical agents were conducting surveillance at J.J.G's residence when a person resembling J.J.G. arrived at the location driving the black Audi that is the subject of Joseph's motion to suppress.   Although the agents had with them an arrest warrant for J.J.G. on unrelated charges, from their vantage point they were not 100% certain that the individual driving the Audi was J.J.G., and they continued to surveil the individual as he entered a residence.  In the meantime, based on the totality of the investigation, officers confirmed that the Audi was the same vehicle that was following and stalking Stockton on the morning of his murder.  Homicide detectives made arrangements to tow the Audi to the police station and obtain a warrant for its search because it was an instrumentality used in the commission of Stockton's murder.  As the Audi was in the process of being towed, J.J.G. came out of his house, was positively identified by agents, and was arrested on the unrelated arrest warrant.

The Audi was towed to the Sheriff's Office impound lot.  The next morning, homicide detectives observed the Audi at the impound lot.  The Audi was registered to a third party with the initials D.L.  Detective Evans observed in broad daylight and in plain-view through the vehicle's windows an I-Phone resting on the driver's seat, marijuana, and what appeared to him, based on his training and experience, to be crack cocaine in the center console area.  Detective Evans applied for and received a search warrant to search the vehicle (Attachment A).   The first search warrant authorized Detective Evans to search and seize electronic communication cellular phone evidence, marijuana, cocaine, SIM cards or batteries, and phone chargers.  The warrant also authorized DNA processing and latent print processing.

During the search of the vehicle, which occurred at approximately 1:00 p.m., Evans located a fully loaded semi-automatic pistol, which may have been the same caliber as the firearm used to commit Stockton's murder.  In an abundance of caution, Evans secured a second search warrant (Attachment B) which allowed him to search and seize pistols and gun boxes.

Just a few minutes later, Evans realized that he had neglected to include ammunition in the property list, and he also corrected two scrivener's errors in the affidavit.[1]  Thus, Evans applied for and received a third search warrant (Attachment C).

## II. ARGUMENT

Joseph incorrectly argues that he has standing to challenge the search of the black Audi as he was not the vehicle's registered owner, did not operate the vehicle, and had no possessory interest in the vehicle.  Joseph was not a passenger nor was he present when the vehicle was initially

---

[1] In Attachments A and B, on page four of the affidavit, a sentence starts with, "His designated place of employment is …." Detective Evans corrected and completed this sentence in Attachment C.  In addition, in Attachments A and B, on page five of the affidavit, the date listed in the third paragraph should have been Sunday, July 8, 2018 rather than Sunday, July 9, 2018.  This correction was made in Attachment C.

secured or subsequently searched.  In short, Joseph had absolutely no reasonable expectation of privacy in the car.

### A.  Joseph Did Not Have a Reasonable Expectation of Privacy in the Contents of the Black Audi

As a threshold matter, no Fourth Amendment right of Joseph's was implicated by the search of the Audi because Joseph did not own the vehicle and was not present at the time of its search. Thus, Joseph had no possessory interest in the vehicle and no reasonable expectation of privacy in its contents.  See Rakas v. Illinois, 99 S. Ct. 421, 425 (1978) ("[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed"); United States v. Chanthasouxat, 342 F.3d 1271, 1273 n.1 (11th Cir. 2003); United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) ("a passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents"); United States v. Ross, No. 07-14768, 280 Fed. Appx. 947, 947 (11th Cir. June 11, 2008) ("[i]t is well-established that a passenger in a private car, who has no possessory interest in the car, does not have a legitimate expectation of privacy in the interior of the vehicle because he does not have the right to exclude others from the car.")  Here, Joseph had even less standing that a passenger in a vehicle because he was not present at the time the car was towed nor subsequently searched.  Joseph lacked "the right to exclude," others from the vehicle, which is among the most critical indicia of a legitimate expectation of privacy.  Rakas, 439 U.S. at 143 n.12; see also United States v. Gibson, 708 F.3d 1256, 1278 (11th Cir. 2013) (describing "the ability to exclude others from property" as "an important factor in the standing analysis").

Joseph asserts that he has standing to contest the search of the Audi because he sometimes had permission from the registered owner to drive the vehicle. Notwithstanding this fact, Joseph still lacks standing to challenge the search. The Eleventh Circuit recently held that a vehicle passenger who asserted that he had permission from the owner to drive the subject vehicle at any time, who had a spare key to the vehicle, who left his personal belongings in the car, and who paid to repair the car, nevertheless lacked standing to challenge the vehicle search because he did not have exclusive custody and control of the vehicle as a mere passenger. United States v. Dixon, 901 F.3d 1322, 1339 (11th Cir. 2018). The Court went on to make clear that the fact that the passenger "… may have used the car on other occasions, even frequently, does not give him a durable interest in the car equivalent to that of the legal owner and driver." Id. Here, again, Joseph was not a passenger in the Audi, nor was he even present at the time it was seized or searched. Joseph's argument fails.

**B.  Joseph Fails to Meet his Burden with Regard to a Franks Hearing**

Joseph also argues that the state search warrants (Attachments A, B and C) contained material misrepresentations in that the detective's plain view search could not have occurred in the manner described in the warrants. Joseph alleges that the dark tint on the Audi's windows would have prevented the detective from looking inside the car.

Affidavits supporting search warrants are presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). In order to be entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit, a defendant must make a substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false, and that the false statements were necessary to the finding of probable cause. Id.

When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which a defendant has shown are arguably false or misleading. Id. at 171-72. Even if intentional or reckless omissions exist, a warrant will be invalidated only if the inclusion of the omitted information would have prevented a finding of probable cause. Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997). Looking only at the remaining portions of the affidavit, the court will then determine whether the omitted informationwould have prevented a judge from finding the existence of probable cause. Id.

A defendant bears the burden of showing that, "absent those misrepresentations or omissions, probable cause would have been lacking." United States v. Novaton, 271 F.3d 968, 987 (11th Cir. 2001). "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Id. at 986 (quoting Franks, 438 U.S. at 171-72); United States v. Cross, 928 F.2d 1030, 1040 (11th Cir. 1991). Insignificant and immaterial omissions will not invalidate a warrant. United States v. Arbolaez, 450 F.3d 1283, 1294 (11th Cir. 2006); United States v. Glinton, 154 F.3d 1245, 1261 (11th Cir. 1998); United States v. Reid, 69 F.3d 1109, 1117 (11th Cir. 1995); United States v. Jenkins, 901 F.2d 1075 (11th Cir. 1990); Furthermore, a "false statement knowingly and intentionally made" (or a material misrepresentation or material omission also so made) does not include negligent or innocent mistakes.   Franks, supra, at 170. A search warrant affidavit has a "presumption of validity." Id.

A "substantial preliminary showing" is defined by requiring: that a challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine ... those allegations must be accompanied by an offer of proof ... they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses

should be furnished, or their absence satisfactorily explained. Franks, supra, at 170. Also, in the context of the requirement that the affidavit be "truthful," this does not mean "truthful" in the sense that every fact recited in the affidavit is necessarily correct, rather it is to be "truthful" in the sense that the information put forth is believed or is appropriately accepted by the affiant as true. Id. at 165.

Although Franks provides no guidance regarding the elements constituting "reckless disregard," the Supreme Court, in a First Amendment context, has found that reckless disregard for the truth requires a showing that the affiant entertained serious doubts as to the truth of his publication. St. Amant v. Thompson, 390 U.S. 727, 731 (1968). Finally, a defendant's burden is not met simply by making a conclusory attack, as the defendant does in this case. A defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false" and his allegations of deliberate falsehood or reckless disregard for the truth "must be accompanied by an offer of proof." Franks, 438 U.S. at 171.  A defendant's "bare allegations" unsupported by offers of proof do not warrant a Franks hearing. United States v. Shurn, 849 F.2d 1090, 1096 (8th Cir. 1988).

Here, Joseph fails to make the required substantial preliminary showing.  Thus, under these well established principles, Joseph's allegations fall woefully short of satisfying the requirements needed for a hearing.

Joseph alleges in a conclusory fashion that the Audi's tinted windows would have been too dark to permit the detectives to make a visual observation of the vehicle's contents.  Joseph does not make an offer of proof in this regard.  Joseph is seemingly under the impression that Detective Evans obtained the search warrant for the Audi in the late hours of Sunday, July 8, 2018.  In fact,

Detective Evans inspected the Audi in broad daylight the next day, July 9, 2018, and obtained the first warrant at approximately 11:13 a.m.

Further, even if the Court excises the portion of the affidavit that contains Detective Evans' visual observations with regard to the cell phone, marijuana, and cocaine, there remains more than sufficient probable cause to search the vehicle. That Audi, as noted above, followed and stalked Frederick Stockton and was in J.J.G's possession, the same individual who possessed the Honda Accord which was actually utilized during the homicide. J.J.G. was also linked to Delson Marc, the individual whom police believe ordered Stockton to be killed.

Under these circumstances, Joseph has failed to meet his burden and the Court is not required to conduct a Franks hearing.

## III.  CONCLUSION

For the foregoing reasons, the United States requests that the Court deny Joseph's motion to suppress in its entirety without a hearing.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: *Rinku Tribuiani*
      Fla. Bar. No. 0150990
      Assistant United States Attorney
      United States Attorney's Office
      500 S. Australian Avenue, Suite 400
      West Palm Beach, Florida 33401

## CERTIFICATE OF SERVICE

**I hereby certify** that on October 25, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

*s/ Rinku Tribuiani*
Assistant United States Attorney

### SERVICE LIST
### United States of America v. Delson Marc, et al.
### Case No. 18-80153-CR-DIMITROULEAS
### United States District Court, Southern District of Florida

| | |
|---|---|
| **Rinku Tribuiani**<br>U.S. Attorney's Office<br>500 S. Australian Avenue, Suite 400<br>West Palm Beach, Florida 33401<br>TEL: (561) 820-8711<br>Attorney for USA | **MichaelCohen**<br>6400 N. Andrews Avenue, Suite 505<br>Fort Lauderdale, FL 33309<br>TEL: (954) 928-0059<br>Attorney for Balmy Joseph<br>Method of Service: CM/ECF and email |